UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 31, 2019

LETTER TO COUNSEL

     RE:   *Michael C. v. Commissioner, Social Security Administration*;
              Civil No. SAG-18-1808

Dear Counsel:

On June 18, 2018, Plaintiff Michael C. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claim for Supplemental Security Income. ECF 1. I have considered the parties' cross-motions for summary judgment, and Plaintiff's reply. ECF 16, 18, 19. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA, and remand the case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff filed the instant claim for benefits on October 15, 2015, alleging an onset date of July 29, 2013. Tr. 172-80. His claim was denied initially and on reconsideration. Tr. 98-101, 105-10. A hearing was held on March 15, 2017, before an Administrative Law Judge ("ALJ"). Tr. 36-64. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 17-31. The Appeals Council declined review, Tr. 1-7, making the ALJ's decision the final, reviewable decision of the SSA.

The ALJ found that, during the relevant time frame, Plaintiff suffered from the severe impairments of "traumatic brain injury status post gunshot wound to the face, blind in the right eye secondary to self-inflicted gunshot wound, post-traumatic left arm weakness (non-dominant) and mood disorder." Tr. 19. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 416.967(a) except sitting for 6 hours and standing and walking for no more than 5 hours of an 8-hour day. He can lift and carry 10 pounds occasionally and frequently with the right upper extremity and lift 5 pounds with the left upper extremity. He is limited to frequent climbing, no climbing of ladders, ropes, or scaffolds and frequent balancing. Reaching with the left upper extremity is limited to occasional and is limited to occasional handling and fingering with the left, non-dominant upper extremity. He should avoid dangerous machinery and unprotected heights. He has monovision and would have

      incomplete peripheral vision. He is limited to simple and detailed work with no production rate paced jobs.[1]

Tr. 23. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform his past relevant work as a sales clerk or tattoo artist, but could perform one job existing in the national economy, specifically the job of surveillance system monitor. Tr. 30-31. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 31.

      Plaintiff raises three primary arguments on appeal: (1) that the ALJ erred in considering his moderate limitations in concentration, persistence, and pace when formulating his RFC assessment; (2) that the ALJ failed to reconcile an apparent conflict between the RFC assessment and the job identified by the VE; and (3) that the ALJ's determination that he could perform the job of surveillance system monitor was not supported by substantial evidence, since the job is obsolete. I agree that the ALJ's consideration of Plaintiff's limitations in concentration, persistence, and pace was insufficient under governing Fourth Circuit law, and that the ALJ failed to identify and address an apparent conflict regarding the VE's testimony, and I therefore grant remand under sentence four. In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

      First, Plaintiff contends that the ALJ's assessment of his concentration, persistence, and pace was erroneous. The ALJ determined that Plaintiff had "moderate" difficulties in that functional area, and addressed that limitation by restricting Plaintiff to "simple and detailed work," and "no production rate paced jobs." Tr. 22, 23. This Court's ability to review the limitation to "no production rate paced jobs" is hampered by a lack of definition, as addressed by the Fourth Circuit's recent opinion in *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019). In *Thomas*, the Fourth Circuit held that the ALJ's failure to define "production rate or demand pace" was fatal to the RFC assessment, because the lack of clarity frustrated appellate review. *Id.* at 312-13. In Plaintiff's case, the RFC assessment contains an equivalent limitation to "no production rate paced jobs," without further definition of those terms. Tr. 23. Absent such a definition, I cannot ascertain whether the limitation suffices to address Plaintiff's moderate limitation in concentration,

---

[1] While not an independent basis for remand, I note that the unusual wording of the ALJ's RFC assessment renders it difficult to understand. It is unclear why a claimant would be limited to carrying a particular weight "occasionally and frequently," since those are two different frequencies. Presumably, a claimant who can carry a weight frequently can also carry it occasionally. Further, the restriction to "frequent climbing," without a clarification as to what surfaces can be climbed, deviates from the standard RFC language assessing a claimant's ability to climb ramps, stairs, ladders, ropes, and scaffolds. Finally, I also note that the ALJ's application of the special technique for evaluating mental impairments appeared highly unusual. Without explanation as to how he parsed symptoms which could be attributable to Plaintiff's various mental impairments, it appears that the ALJ applied the special technique first to "anxiety and substance abuse," and then applied it a second time to "mood disorder," reaching different conclusions in some functional areas. *Compare* Tr. 19-21 *with* Tr. 22-23. Though the dual analyses did not result in error warranting remand in this case, employing this technique in future cases could cause more significant legal defects.

persistence, or pace. On remand, then, the ALJ should ensure that the RFC assessment and related analysis comports with *Thomas.*

Next, Plaintiff argues the RFC assessment was inconsistent with the required reasoning level of the job of surveillance system monitor. The ALJ is required to address any conflicts or apparent conflicts between the VE's testimony and the information contained in the Dictionary of Occupational Titles ("DOT"). *See Pearson v. Colvin,* 810 F.3d 204, 208-10 (4th Cir. 2015); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A Dec. 4, 2000) ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.") Although the RFC assessment refers to "simple and detailed work," Tr. 23, the hypothetical question posed to the VE limited the hypothetical claimant to "simple work," Tr. 58-59. The VE responded by identifying a single position: Surveillance-System Monitor (DOT Code 379.367-010). Tr. 59. According to the DOT, that position requires a Reasoning Level of 3, U.S. Dep't of Labor, *Dictionary of Occupational Titles* § 379.367-010 (4th ed. 1991), 1991 WL 673244, which requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," and "[d]eal with problems involving several concrete variables in or from standardized situations," *id.* App. C. The Fourth Circuit has explained that "an apparent conflict exists between a limitation to simple tasks and Reasoning Development Level 3 jobs." *Keller v. Berryhill*, 754 F. App'x 193, 198 (4th Cir. 2018) (unpublished) (citing an internal Social Security Administration memorandum); *see also Thomas v. Berryhill*, 916 F.3d 307, 313-14 (4th Cir. 2019) (holding apparent conflict existed between limitation to "short, simple instructions" and jobs requiring Reasoning Level 2). Thus, the ALJ should have identified the apparent conflict and explored the issue with the VE to determine whether, in fact, Plaintiff was capable of performing the proposed monitoring work.

Plaintiff's final argument, regarding the obsolescence of the job of surveillance system monitor, is not persuasive as stated. Plaintiff contends that the Aviation and Transportation Security Act, Pub. L. No. 107-71, 115 Stat. 597 (2001) and the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), created the Transportation Security Administration ("TSA") and rendered it responsible for security over "all modes of transportation." ECF 16-1 at 20-21. Plaintiff thus cites the statutory requirements for TSA's surveillance system monitors, listed at 49 U.S.C. § 44935, and argues that those requirements are inconsistent with the position of surveillance system monitor set forth in the DOT.

The flaw in Plaintiff's argument is that the TSA's authority does not extend over all public transportation terminals. For example, cities maintain their own subway, bus, and commuter train systems, without using TSA employees. Certainly, there are reasons to question whether the job of Surveillance System Monitor, as described in the DOT from more than thirty years ago, remains viable in the current economy. *See Britton v. Berryhill*, No. 4:17 CV 1956 DDN, 2018 WL 4332062, at *5 (E.D. Mo. Sept. 11, 2018) (describing a scholarly article concluding that all 58 sample surveillance system monitor positions studied required "physical or mental duties substantially in excess of those contained in the DOT's description"). However, the statutory

requirements for a TSA employee, alone, do not establish that the position is now obsolete in all public transportation terminals.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order will issue.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge